IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
WILFREDO QUINTANA,                  )
                                    )
          Plaintiff,                )
                                    )
     v.                             )    1:05CV00667
                                    )
JO ANNE B. BARNHART,                )
Commissioner of Social Security,    )
                                    )
          Defendant.                )
```

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his claims for Social Security disability insurance benefits and a period of disability. After an initial remand, the Commissioner's denial decision became final on May 15, 2005, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge (ALJ). Plaintiff has filed a motion for summary judgment, Defendant has filed a motion for judgment on the pleadings, and the administrative record has been certified to the Court for review.

## History

Plaintiff, who was 45 years old at the time of his hearing in front of the ALJ, has an 11th grade education. His past relevant work experience is as a building superintendent and a hardware store stock worker. According to the ALJ, Plaintiff alleged disability as of February 28, 2001, due to severe back pain, inability to stand/walk/sit without an assistive device, status post lumbar laminectomy and discectomy, and carpal tunnel syndrome.

In reaching a decision on Plaintiff's claim, the ALJ followed the five-step analysis set out in the Commissioner's regulations. See 20 C.F.R. § 404.1520. Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Id. The burden of persuasion is on the claimant through the fourth step. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. Id.

The ALJ first found that Plaintiff had not engaged in substantial gainful activity since the date of his alleged onset of disability. He then found that Plaintiff suffered from the severe impairments of lumbar disc disease, cervical spondylosis with osteoarthritis and protrusion, and mild carpel tunnel syndrome. The ALJ next decided that Plaintiff's severe impairments did not meet or medically equal the requirements of any listing in Appendix 1, Subpart P, Regulation Number 4.

Based, in part, on the opinion of Treating Physician Rafiy and the state agency physician's report, the ALJ found that Plaintiff had the residual functional capacity (RFC) to lift/carry 20 pounds occasionally and 10 pounds frequently, but with a sit/stand option

to accommodate an inability to sit or stand for prolonged periods; to occasionally push/pull; and to perform fine fingering 2/3 of the day. Based on this RFC, the ALJ concluded that Plaintiff could not return to his past relevant employment. However, utilizing the testimony of a Vocational Expert, he found that Plaintiff could perform jobs which existed in significant numbers in the national economy. Accordingly, the ALJ ruled that Plaintiff was not disabled within the meaning of the Social Security Act.

**Issue**

Plaintiff complains that the ALJ's rationale for discounting Plaintiff's credibility "is both speculative and conclusory in nature" (Pl.'s Br. at 8), and thus, unsupported by substantial evidence. The Court disagrees.

The scope of review by this Court of the Commissioner's decision denying benefits is limited. Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive.

The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case de novo. Id. The Court may not make credibility determinations, or substitute its judgment for that of the ALJ's. Johnson v. Barnhart, 434 F.3d 650,

653 (4th Cir. 2005). "Substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (citation omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance," Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

**Discussion**

The ALJ first explained that Plaintiff's credibility was "diminished by secondary gain issues." (Tr. at 261.) The ALJ alluded to Plaintiff's receipt of workers' compensation benefits[1] (see Tr. at 28, 375); such consideration is not improper. See Gaddis v. Chater, 76 F.3d 893, 896 (8th Cir. 1996) (allowing an ALJ to judge credibility based on a strong element of secondary gain); see also Curran-Kicksey v. Barnhart, 315 F.3d 964, 970 (8th Cir. 2003) (acknowledging the circuit has "recognized that pending lawsuits may indicate that there is an 'element of secondary gain' in the claimant's disability claim").

The ALJ next discussed Plaintiff's somatization on a visit in January 2002. The caregiver reported that Plaintiff's strength appeared to be greatly decreased, but "[w]ithin all strength

---

[1]Interestingly, when Plaintiff filed his request for hearing, he denied that he had filed a workers' compensation claim. (See Tr. at 118.)

-4-

testing [Plaintiff] presented with significant giveway behavior."[2] (Tr. at 216.) Several months prior, his neurologist observed "prominent giving away weakness." (Tr. at 198.)

The ALJ then remarked on Plaintiff's lack of motivation to return to work, specifically referring to a January 2002 psychological evaluation. The caregiver wrote that Plaintiff "has no return to work goal ... unless he is '100% or more' in terms of his physical capabilities." (Tr. at 222.) Clearly, this is not the Administration's standard of disability, which requires more than mere inability to work without pain. Stuckey v. Sullivan, 881 F.2d 506, 509 (7th Cir. 1989); Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Dumas v. Schweiker, 712 F.2d 1545, 1552 (2nd Cir. 1983). Plaintiff also wrote in his Disability Report that rehabilitation services were "not needed." (Tr. at 102.) Yet, the ALJ noted that Dr. Goeke recommended pain management rehabilitation. Additionally, Plaintiff testified that, although his right hand was

---

[2] Give way weakness is a sign of non-organic behavior, and may represent either somatization or malingering. An "organic" issue is one that relates to the body or structure of an organism. Medline Plus [U.S. National Library of Medicine, available at http://www.nlm.nih.gov/medlineplus/mplusdictionary. html (version last modified February 4, 2003)]. Thus, non-organic behavior is behavior unrelated to a physical condition. Somatization is the conversion of an emotional, mental or psychosocial problem to a physical complaint. Id. Malingering is pretending or exaggerating an incapacity or illness so as to avoid duty or work. Id.

Smorto v. 3DI Technologies, Inc., 393 F. Supp. 2d 1304, 1307 n.4 (M.D. Fla. 2005).

-5-

improved after carpal tunnel surgery, he "won't be able to work with it." (Tr. at 379-80.)

The ALJ found particularly incredible Plaintiff's testimony that he had to stop 5 times during the 40-minute drive to the hearing from his home, and yet exhibited no discomfort during the hearing. (See Tr. at 380.) An adjudicator is permitted to take such an observation into consideration. See Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483, 34486 (providing the adjudicator may consider his "own recorded observations of the individual as part of the overall evaluation" of the claimant's credibility).

Plaintiff testified that he complied with his medication regimen (see Tr. at 381), but his neurologist noted in November 2003 that Plaintiff was not taking his medications (Tr. at 367).[3] See Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1992) (claimant's failure to, inter alia, follow prescription regimen supported ALJ's inference that claimant's pain was not as severe as he asserted). The ALJ found this to be a reason to discount Plaintiff's allegations of pain. (Tr. at 261.)

Plaintiff's inconsistencies further support the ALJ's decision. A strong indication of credibility is the consistency, both internally and with other information in the case record, of the claimant's statements, especially to the extent that they are consistent with the medical signs, laboratory findings, and other

---

[3] Plaintiff indicated in his Disability Report that he suffered no side effects from his medications (Tr. at 101), but contradicted that statement in his testimony (see Tr. at 37).

-6-

information provided by medical sources. SSR 96-7p, 61 Fed. Reg. at 34486. The ALJ noted that Plaintiff "portrayed his pain as incredibly severe." (Tr. at 261; see, e.g., Tr. at 34, 218, 335-38.) Yet there is no record that Plaintiff ever sought emergency care and, during the relevant period, no caregiver suggested a spinal surgery. In fact, Plaintiff typically went 2 to 3 months between physician visits. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) ("[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility."). Further, Plaintiff reported that he had lost the strength in his leg and used a cane to ambulate (Tr. at 113), but there is no record that it was prescribed, and his neurologist consistently noted that he exhibited no weakness (see, e.g., Tr. at 18, 192, 236, 371). As noted by the ALJ, no physician has provided a reason for such incredible, severe complaints of pain. (Tr. at 260.)

Objective findings also fail to support Plaintiff's level of pain. The ALJ noted the minimal findings. (Tr. at 17.) A claimant's allegations about her pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996). A lumbosacral computed tomography scan in May

-7-

2001 showed only mild degenerative changes and no disc herniation. (Tr. at 152.) An August 2001 electromyograph and nerve conduction study ("EMG/NCV") revealed evidence of only a mild chronic L5 radiculopathy without any active features and no evidence of superimposed mononeuropathy in the left extremities. (Tr. at 202.) A magnetic resonance image ("MRI") of October 2001 showed degenerative change and a small central disc bulge in the lumbar spine, but no evidence of root compression. (Tr. at 193.) There was also a central disc bulge in the cervical spine but, again, small. (Tr. at 194.)

By January 2004, an EMG/NCV revealed only a mild right median neuropathy and chronic, but inactive, left C5-6 radiculopathy. (See Tr. at 349.) The neurosurgeon noted that Plaintiff's lower extremities were not affected.[4] (Id.) Plaintiff appeared to be relaxed in appearance and in no acute distress. (Tr. at 350.) His neck range of motion was supple, his pulses were present and normal, and his joints appeared normal. Moreover, the plan did not include any prescription. (Id.) A palpation of Plaintiff's cervical spine elicited only some mild tenderness. His neurological exam was normal. (Tr. at 352.) Plaintiff's motor exam revealed, on a 5-point scale, strength of 5 in his lower extremities, and of -5 in his upper extremities. (Tr. at 353.)

---

[4]Contrary to this observation, Plaintiff's records are replete with complaints of leg pain, weakness, and numbness. (See, e.g., Tr. at 35, 229, 335-38, 376.)

-8-

Studies conducted in February 2004 showed only a C6-7 disc protrusion, with no evidence of nerve root edema or effacement. (Tr. at 346.) The neurosurgeon concluded that Plaintiff had no "surgically significant cervical disease" and no cervical myelopathy. (Id.)

Plaintiff urges that his complaints of severe pain are bolstered by the earlier statements of his treating physicians that he is disabled by such pain. (See Tr. at 178-83, 230.) Dr. Rafiy's statement in May of 2001 was conditional, being only "at this time." (Tr. at 183.) Dr. Feraru's July 2002 opinion is wholly conclusory and materially at odds with the 2004 neurological examination. The ALJ pointed out that even Dr. Feraru found no definite weakness. (Tr. at 18, 261.) The opinions of a treating physician are generally accorded more weight, see 20 C.F.R. § 404.1527(d)(2), but carry no special significance when offered as to the ultimate question of disability, which is the sole province of the ALJ, id. § 404.1527(e). And the ALJ may discount subjective complaints of pain based on credibility determinations, including evasive, unclear or exaggerating testimony by the claimant. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005). Moreover, the ALJ may discount physicians' opinions which are not supported by medical findings or contradicted by the examinations of other physicians. While Plaintiff undoubtedly convinced one neurologist that he is disabled by his pain, he failed to so convince the ALJ, whose credibility decision is amply supported.

-9-

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for summary judgment (docket no. 9) be denied, that Defendant's motion for judgment on the pleadings (docket no. 11) be granted, and that Judgment be entered dismissing this action.

```
                              /s/ Russell A. Eliason
                           United States Magistrate Judge
```

December 15, 2006